UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| LUKE A. WALKER<br>    and<br>KATHLEEN E. WALKER, | : <br> : <br> : <br> : | Case No.<br><br>Judge |
| Plaintiffs | : <br> : | COMPLAINT WITH JURY DEMAND |
| vs. | : <br> : | |
| TOYOTA MOTOR CREDIT<br>    CORPORATION, | : <br> : <br> : | |
| Defendant | : | |

**JURISDICTION AND VENUE**

1. The plaintiff, Luke A. Walker (hereinafter *Luke*), is a resident and citizen of the Commonwealth of Kentucky and the County of Boone.

2. The plaintiff, Kathleen E. Walker (hereinafter *Kathleen*), is a resident and citizen of the Commonwealth of Kentucky and the County of Kenton.

3. The defendant Toyota Motor Credit Corporation (hereinafter *TMCC*) is a California corporation with its principal office in California, but authorized to do, and does, business in the Commonwealth of Kentucky.

4. This court has subject matter jurisdiction of this matter under 28 U.S.C. § 1331, as the cause of action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, and jurisdiction of the pendent state claims under 28 U.S.C. § 1367.

5. Venue is proper in this court under 28 U.S.C. § 1391, because Defendant engaged in substantial conduct relevant to the claims of the Plaintiffs, and caused harm to Plaintiffs in this district.

## **BACKGROUND FACTS**

6. On or about November 1, 2008, plaintiff Kathleen Walker purchased a 2009 Toyota Corolla from Toyota of Cincinnati, Inc.

7. This purchase was financed by the defendant TMCC and the plaintiff Luke Walker, Kathleen's father, co-signed on the note.

8. Kathleen set up an automatic bill pay on the defendant's TMCC website, authorizing payments every month in the amount of $370.00, although the total due each month was only $368.43.

9. Payments were deducted by the defendant TMCC from Kathleen's account, without problems, on 11/28/08, 12/28/08, 1/28/09, 2/28/09, 3/28/09, and 4/28/09, for the December, January, February, March, April and May payments, respectively.

10. Processing the payment on the 28th would ensure it posted to Toyota by the 1st of the following month - the due date.

11. In April or May 2009, having recently moved, Kathleen called defendant TMCC at their customer service number, and requested a change of address and telephone number.

12. Despite requesting these changes, the only change the defendant TMCC made was a change to her phone number.

13. In mid-July 2009, both Kathleen and Luke were contacted regarding June's payment.

14. The TMCC agent explained to plaintiffs that when changes are made to the website, the automatic bill pay is cancelled.

15. There had been no notice at the time the changes were made that the automatic bill pay would be canceled or that Kathleen would need to reactivate the automatic bill pay.

16. As a result, June's payment had not been processed.

17. On or about, July 21, 2009, Kathleen authorized a one-time payment of $370.00 online to cover June.

18. On or about that same date, Kathleen also spoke with a customer service representative of the defendant TMCC on the phone to effect the her address change the defendant had not made in April or May; defendant TMCC's representative also confirmed that the automatic bill pay was active.

19. During the period from August through October 2009, the plaintiffs had multiple contacts with defendant TMCC's representatives.

20. Each time, plaintiffs were advised that the bill pay was still not active, and another payment had been missed.

21. Kathleen paid $1,107.44 over several months.

22. Every time Kathleen spoke with defendant's representative, they assured her that the account was paid in full, and that the scheduled payments were working.

23. In late, October 2009, Kathleen changed her bank account information so payments would be taken from a new account.

24. Because of her past experiences with TMCC's lack of notice of termination of the automatic bill payment process when any change is made to the account information, she re-enabled the automatic bill pay.

25. On December 17, 2009, defendant TMCC contacted plaintiffs to state that November's and December's payments had been missed.

26. When Kathleen reviewed the bank account information on file on the Toyota website, she found only the old account, and not the new account information she had provided.

27. As the payments had been scheduled to come from an "unknown and unverified

account," no payments had been made.

28. Luke authorized a one-time payment of $1,073.72 from his GE Credit Union checking account, which would cover November, December, and the upcoming payment for January.

29. Luke did not and does not have authority to authorize any activity on any of Kathleen's accounts.

30. The defendant assessed a $10.00 Western Union transfer fee for this payment, making a total authorized payment of $1,083.72.

31. On December 18, 2009, the defendant TMCC caused a debit in the amount of $1,083.72 was deducted from Kathleen's 5th/3rd Bank account, overdrawing the account.

32. Luke's GE Credit Union account was not charged at this time, despite the authorization given by him on December 17.

33. Shortly thereafter, Luke received US Postal Service mail from Western Union, at his address, detailing the transfer from the wrong account.

34. No notice was provided by TMCC to Kathleen of the withdrawal.

35. Between December 21, 2009 and January 12, 2010, Kathleen's 5th/3rd account was charged over $1,000 in various overdraft and returned item fees.

36. She called TMCC numerous times over this period, demanding that the money be returned to her account as neither she nor Luke had authorized the payment.

37. TMCC refused to retract the withdrawal, stating that since Luke is the co-buyer on the car, he has the authority to access her accounts to make payments, a position Luke denied in his numerous contacts with TMCC.

38. The plaintiffs also contacted Western Union, which indicated that TMCC would have to resolve the issue.

39. On January 12, 2010, TMCC finally credited the $1,083.72 to Kathleen's account: however there was no contact, by telephone, mail or otherwise, from TMCC about their change in position.

40. On or about January 12, 2010, TMCC contacted Luke to make a new payment in the amount of $1,073.72. Luke once again authorized it to be taken from GE Credit Union account.

41. Subsequent US Postal Service mail from Western Union confirmed the transfer with the correct account information.

42. The debit for this charge was posted to Luke's account on January 14, 2010.

43. Between January 13, 2010 and February 2, 2010, Kathleen contacted TMCC several more times to recoup the fees associated with their unauthorized payment.

44. The TMCC customer service representatives with whom she spoke were noncommittal and continuously promised to call her back after reviewing the information.

45. Despite these promises, no return calls were ever made by TMCC.

46. On or about February 2, 2010 Kathleen made an automated phone payment for $370.00 to pay February's bill; despite taking this action, the payment has still not posted to her account.

47. On February 5, 2010, after filing a dispute directly with her bank, 5th/3rd Bank reversed the fees associated with the unauthorized payment.

48. On February 11, 2010, TMCC called and left voicemail for Kathleen requesting a return call.

49. That same day Luke was called and told by TMCC that "no payments have been received in months."

50. The TMCC representative alleged that the $1,073.72 payment made by Luke on January 12, 2010 did not occur, despite the money being withdrawn from his account.

51. When Luke told the TMCC representative that the debit had been posted from Luke's account, the TMCC representative changed his story and tried to say that TMCC had reversed that payment and had placed monies back into Luke's account.

52. The TMCC representative also alleged that no February payment had been made and as a result, the account was four months behind.

53. This was denied by Luke and the TMCC representative became increasingly abusive and argumentative.

54. When it became apparent to Luke that the call was accomplishing nothing, he ended the call.

55. On February 13 or 14, 2010, the defendant TMCC had the vehicle repossessed, when it had no right to do so, thereby converting both the vehicle and Kathleen's personal possessions.

56. TMCC issued a Notice of Intent to Sell Property, dated February 18, 2010, indicating that they intended to sell the vehicle after March 5, 2010.

57. Despite the date on the notice, the notice was in fact mailed no earlier than February 23, 2010, the postage meter date on the envelope.

## COUNT I – FRAUD

58. The plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

59. The actions of TMCC and its employees constitute fraud.

60. These actions caused the plaintiffs damage.

## COUNT II – BREACH OF FIDUCIARY AND STATUTORY DUTIES

61. The plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

62. The actions of TMCC and its employees constitute a breach of its fiduciary and statutory duties to the plaintiffs.

63. These actions caused the plaintiffs damage.

### COUNT III – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

64. The plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

65. The actions of TMCC and its employees constitute a breach of its duty of good faith and fair dealing to the plaintiffs.

66. These actions caused the plaintiffs damage.

### COUNT IV – KENTUCKY CONSUMER PROTECTION ACT

67. The plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

68. The actions of TMCC and its employees constitute a violation of the Kentucky Consumer Protection Act.

69. These actions caused the plaintiffs damage.

### COUNT V
### FAIR DEBT COLLECTIONS PRACTICES ACT
### 15 U.S.C. § 1692 *et seq.*

70. The plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

71. The actions of TMCC and its employees constitute violations of the Fair Debt Collection Practices Act, 16 U.S.C. § 1692, *et seq.*

72. These actions caused the plaintiffs damage.

## COUNT VI – CONVERSION

73. The plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

74. The actions of TMCC and its employees intentionally converted the property of the plaintiffs.

75. These actions caused the plaintiffs damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following:

1. Trial by jury, for all issues so triable;

2. All costs and interest associated with this action;

3. Statutory damages;

4. Compensatory and punitive damages;

5. Temporary and permanent injunctions restraining the defendant from further violations;

6. Reasonable attorney's fees; and

7. All other relief this Court deems fitting and proper.

/s/ Eric C. Deters
Eric C. Deters
Kentucky Registration No. 81812
Attorney for Plaintiff
ERIC C. DETERS & ASSOCIATES, P.S.C.
5247 Madison Pike
Independence, KY 41051-7941
859-363-1900   Fax: 859-363-1444
Email: eric@ericdeters.com